# In the United States Court of Federal Claims

No. 18-1118C
(Filed August 30, 2019)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * * *
                              *
                              *
FAREED SEPEHRY-FARD,          *
                              *
            Plaintiff,        *
                              *
    v.                        *
                              *
THE UNITED STATES,            *
                              *
            Defendant.        *
                              *
* * * * * * * * * * * * * * * * * *
```

## MEMORANDUM OPINION AND ORDER

WOLSKI, Judge.

This case was filed *pro se* on July 26, 2018, by Fareed Sepehry-Fard.[1] Plaintiff makes several allegations to the effect that banks had created false mortgages encumbering his property which resulted in foreclosures, and that when he told the federal government about it, the federal government failed to protect him. *See* Complaint (Compl.), ECF No. 1; Verified Opp'n to Def.'s Mot. to Dismiss at 5 (Pl.'s Resp.), ECF No. 10. He has asserted claims against the federal government in relation to those foreclosures. *See* Compl. ¶¶ 24–95. The government has moved to dismiss this case under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). *See* Mot. to Dismiss at 1–5 (Def.'s Mot.), ECF No. 8. Because Mr. Sepehry-Fard has failed to state a claim for relief that falls within this court's jurisdiction, the government's motion to dismiss this case must be **GRANTED**.

---

[1] Plaintiff objects to being called a *"pro se"* litigant, *see* Pl.'s Resp. at 3, as he apparently fails to recognize that the term simply refers to a party representing himself without the assistance of legal counsel.

7018 0040 0001 1393 4960

# I. BACKGROUND

On July 26, 2018, plaintiff Fareed Sepehry-Fard filed his complaint in our court. The complaint contains a number of confusing claims concerning disputed property in California. *See* Compl. ¶¶ 24–95. Mister Sepehry-Fard complains that the United States has failed to stop a number of banks and named individuals from creating false mortgages encumbering his property, *see id.* ¶ 31, claiming the latter were "known international money launderers . . . involved in sex trafficking, human trafficking, prostitution, drug cartel and other illegally obtained monies . . . using Plaintiff's (and other people's homes) as a cover up to launder those illegally obtained monies." *Id.* ¶ 24. The entities and individuals plaintiff claims are thieves and "money launderers" include the U.S. Bank National Association, Greenpoint Mortgage Trust, Nationstar Mortgage LLC, Greenpoint Mortgage Funding, Inc., Capital One, N.A., Severson & Werson APC, Joseph W. Guzzetta, Bernard J. Kornberg, Adam N. Barasch, Mark Joseph Kenney, William A. Aspinwall, Financial Guaranty Insurance Company, and Clear Recon Corp. *Id.*[2]

Plaintiff claims that as a result, he "has become disabled due to Defendant's failure to perform its official duties severely damaging plaintiff emotionally, economically and physically." Compl. ¶ 31. Mister Sepehry-Fard also claims that the United States "in fact aided and abetted aforementioned companies to continue to steal from Plaintiff." *Id.* Plaintiff states that he filed a *qui tam* complaint in a California federal district court in an attempt to sue these "known international money launderers," but his complaint was dismissed "since Plaintiff is not an attorney." *Id.* ¶¶ 24–27 & n.5. In complaining about this dismissal, Mr. Sepehry-Fard demands that "attorneys prove the legislative authority" that allows them to practice law. *Id.* ¶ 27. Further, Mr. Sepehry-Fard challenges the decision of the district judge as "void as a matter of law." *Id.* ¶ 28.

Mister Sepehry-Fard also accuses the previously mentioned entities and individuals of violations of the California Penal Code and federal law. Specifically, Mr. Sepehry-Fard claims that the entities/individuals "have consistently fabricated false, forged, robo signed and robo notarized instruments . . . in clear violation of, inter alia, Cal. Penal Code 115 (a) and (b) as well as US Code §§ 471, 472 and 473." Compl. ¶¶ 88–89. The complaint also accuses the Financial Guaranty Insurance Company (FGIC) of "knowingly or through negligence participat[ing] in these unlawful acts and insur[ing the] aforementioned entities." *Id.* ¶ 92.

Seemingly unrelated to his claims of criminal conduct, Mr. Sepehry-Fard also alleges that the Treaty of Guadalupe Hidalgo exempts his property from "property taxation, foreclosure, eminent domain, liens & levy." Compl. ¶ 80. Although this section of the complaint is particularly incoherent, plaintiff seems to claim that his property is legally exempt from taxation because it can be traced back to the Treaty

---

[2] Plaintiff also implicates "Does 1 through 50." Compl. ¶ 26 n.5.

of Guadalupe Hidalgo and "[n]o local property tax law can supersede International Treaty Law." *Id.* ¶ 84. Plaintiff claims that attempting to foreclose on his property would amount to a "criminal violation of Treaty between our country and REPULIC OF MEXICO, and THAT action would also be a declaration of war on Sovereign REPUBLIC OF MEXICO." *Id.* ¶ 68 (emphasis in original). Any attempt to tax plaintiff's property would, he asserts, be "a felony under Federal Law on false accusation of tax debt at 26 U.S.C. § 7214(a)(1) and/or (2), and/or (3) . . . and/or (9)." *Id.* ¶ 82.

Additionally, Mr. Sepehry-Fard alleges Constitutional violations of the First, Fourth, and Fifth Amendments along with unspecified violations of due process and violations of the Constitution of the State of California. *Id.* ¶¶ 2, 3 n.2.[3] Plaintiff also alleges that the Constitution is a contract and that violations of the Constitution also amount to a breach of contract between the United States and himself. *Id.* ¶ 2.

Plaintiff requests both injunctive relief and damages from the United States. Compl. ¶ 97. Mister Sepehry-Fard requests that this court quiet title regarding his property and award him $25,000,000 in both compensatory and punitive damages for the government's "failure to perform its official duties." *Id.* Plaintiff also requests "a trial by jury be held for all issues so triable." *Id.*[4]

The government has moved for the dismissal of plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject-matter jurisdiction. Def.'s Mot. at 1, 3–4 (Def.'s Mot.), ECF No. 8. Defendant first argues that our court is unable to review district court decisions involving Mr. Sepehry-Fard because "such decisions are not reviewable in this Court." *Id.* at 4. The government also contends that Mr. Sepehry-Fard's criminal claims, tort claims, and constitutional claims are similarly unreviewable for lack of jurisdiction. *Id.* Defendant adds that that claims of violations of state law fall outside our jurisdiction "because state statutes do not create a right to money damages against the United States." *Id.* (citing *Griffin v. United States*, 96 Fed. Cl. 1, 8 (2010)).

---

[3] He explains the basis of his First Amendment claim as being that he "can't be prosecuted for legally asserting . . . my 1st Amendment Right to Free Speech." Compl. ¶ 84.

[4] Neither a trial by jury nor punitive damages are obtainable in our court. *See Arunga v. United States*, 465 F. App'x 966, 967, n.2 (Fed. Cir. 2012) ("By filing in the Court of Federal Claims, one waives the right to a jury trial." (citing *James v. Caldera*, 159 F.3d. 573, 589-90 (Fed. Cir. 1998)); *Greene v. United States*, 65 Fed. Cl. 375, 379 (2005) ("It is well-established that [the Court of Federal Claims] lacks authority to grant punitive damages." (citing 28 U.S.C. § 2674)).

Plaintiff submitted a brief opposing the government's motion. *See* Pl.'s Resp. In it, Mr. Sepehry-Fard argues the government produced "no affidavits nor any declaration from competent fact witness(es) . . . to rebut Plaintiff Verified Complaint Under Oath." *Id.* at 1. In response to the government's argument that this court cannot review decisions of other courts, Mr. Sepehry-Fard states that he "does not nor ever did request to review the prior other court's order(s) in this court, whatever they may be." *Id.* at 4.

Mister Sepehry-Fard also recharacterizes his claims, estimating the amount of property taxes he had paid over more than 21 years and contending he has been subject to an illegal exaction based on those taxes. *Id.* at 8. Plaintiff argues that this alleged illegal exaction violates the Fifth Amendment's Due Process Clause and is within our court's jurisdiction because it involves a tax refund. *Id.* at 11–12. Plaintiff also reiterates his theory that the Constitution is a contract and that any Constitutional violations would also breach this contract between him and the government. *Id.* Mister Sepehry-Fard explains that his claim is based on a "non-judicial judgement [sic]" against defendants based on violations of the Truth in Lending Act of 1968, 15 U.S.C. § 1635 (2010) (TILA). *Id.* at 16.[5] Contemporaneous with his response, plaintiff also filed a motion in which he claims defendant has "defaulted" and must pay $25,000,000. *See* Verified Mot. at 4 (Pl.'s Mot.), ECF No. 11.

In its reply, the government argues that its motion to dismiss does not depend on any evidentiary issues and that our court does not possess jurisdiction to entertain Mr. Sepehry-Fard's motion. Def.'s Reply in Supp. of Its Mot. to Dismiss (Def.'s Reply) at 1–2, ECF No. 12. Plaintiff in turn replied, restating his previous arguments and accusing attorneys for the government of "ganging up" on him. Pl.'s Reply at 2, ECF No. 14.

## II. DISCUSSION

### A. Standard of Review

Under RCFC 12(b)(1), claims brought before this court must be dismissed when it is shown that the court lacks jurisdiction over their subject matter. When considering a motion to dismiss a case for lack of subject-matter jurisdiction, courts will accept as true all factual allegations the non-movant made and draw all reasonable inferences in the light most favorable to that party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Pixton v. B&B Plastics, Inc.*, 291 F.3d 1324, 1326 (Fed. Cir. 2002) (stating that on a motion to dismiss for lack of subject-matter jurisdiction this court views "the alleged facts in the complaint as true, and if the facts reveal any reasonable basis upon which the non-movant may prevail,

---

[5] Although Mr. Sepehry-Fard cites TILA, he does not specify how the government allegedly violated the act or explain what this "non-judicial judgement [sic]" is.

dismissal is inappropriate"); *CBY Design Builders v. United States*, 105 Fed. Cl. 303, 325 (2012).

Though a *pro se* plaintiff's filings are to be liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Schirripa v. United States*, No. 1:16-01073, 2018 WL 4049126, at *1 (Fed. Cir. Aug. 24, 2018) (relying on *Erickson*); *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141 (Fed. Cir. 2018), this lenient standard will not spare claims from dismissal which fall outside this court's jurisdiction for failing to establish a breach of contract by the federal government or to identify a money-mandating law which was allegedly violated by the federal government. *See United States v. Mitchell*, 463 U.S. 206, 216–17 (1983). A plaintiff's *pro se* status does not relieve him of the obligation to demonstrate jurisdiction by a preponderance of the evidence. *See McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) (explaining the plaintiff's responsibility for showing that the claim falls within the court's jurisdiction); *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995) (noting that a plaintiff's status does not excuse defects in the complaint); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (stating that the burden of proof for establishing jurisdiction is by a preponderance of the evidence).

## B. Analysis

### 1. Tort Claims

Plaintiff seems to allege tortious conduct in several instances. To the extent plaintiff alleges that the federal government failed to protect him from false mortgages, such allegations of "the negligent or careless performance of a duty by the government sounds in tort and fall outside of this court's jurisdiction." *Lion Raisins, Inc. v. United States*, 54 Fed. Cl. 427, 434 (2002); *see also Krigel v. United States*, 229 Ct. Cl. 73, 81 (1981) ("A claim based on the careless performance of duty by a government employee sounds in tort and is beyond the jurisdiction of this court."). As the Tucker Act explicitly excludes tort claims from our jurisdiction, and the negligent performance of government duties is a tort, the Tucker Act denies our court jurisdiction over such claims. 28 U.S.C. § 1491(a)(1).

Plaintiff also alleges that private entities engaged in tortious behavior, also raising matters which our Court lacks the jurisdiction to entertain. *See, e.g.*, Compl. ¶¶ 2, 31, 61, 89, 92 (complaining that various defendants engaged in fraud and intentional deceit, negligence, trespass, defamation, the negligent infliction of emotional distress, and the intentional infliction of emotional distress). These claims are related to plaintiff's allegations that "the aforementioned companies . . . have sold Plaintiff's private property" in violation of his property rights. Compl. ¶ 25. As previously noted, even if the actions of these defendants could be attributed to the federal government, the Tucker Act specifically withholds from this court jurisdiction over any claims sounding in tort. 28 U.S.C. § 1491(a)(1);

*Khalil v. United States*, 133 Fed. Cl. 390, 392 (2017). Indeed, the Federal Tort Claims Act vests only the United States district courts with jurisdiction over tort claims against the United States---including those for loss of property. 28 U.S.C. § 1346(b)(1); *U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1366 (Fed. Cir. 2013). *See also Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998) ("Even where the claim is framed under non-tort law, the court lacks jurisdiction if the essence of the claim lies in tort."). Thus, to the extent that Mr. Sepehry-Fard argues that the government or private persons or entities committed any of the torts he alleges, this court lacks jurisdiction to hear such claims.

### 2. Claims Against Defendants Other Than the United States

Much of the complaint concerns the actions of a number of private individuals and companies. *See, e.g.*, Compl. ¶¶ 16, 24–26, 29, 39, 41–42. These include the U.S. Bank National Association, Greenpoint Mortgage Trust, Nationstar Mortgage LLC, Greenpoint Mortgage Funding, Inc., Capital One, N.A., Severson & Werson APC, Joseph W. Guzzetta, Bernard J. Kornberg, Adam N. Barasch, Mark Joseph Kenney, William A. Aspinwall, Financial Guaranty Insurance Company, and Clear Recon Corp. *Id.* ¶ 24.

As is common in cases brought by *pro se* plaintiffs, Mr. Sepehry-Fard misunderstands the purpose of this court's jurisdiction. The Tucker Act grants this court jurisdiction over cases against the *United States government* seeking damages for certain claims founded upon the Constitution, statutes, or regulations of the United States, as well as damages for breaches of contracts with the United States. 28 U.S.C. § 1491(a)(1).[6] And, as explained above, even where the United States is named as a defendant, Congress has specifically withheld from our subject-matter jurisdiction cases seeking damages for torts, as well as claims based on crimes allegedly committed against the plaintiff. *Id.*; *Stanwyck v. United States*, 127 Fed. Cl. 308, 312–14 (2016).

Insofar as Mr. Sepehry-Fard's complaint is directed at conduct by private parties, this court lacks authority to hear the matter. *Vlahakis v. United States*, 215 Ct. Cl. 1018, 1018–19 (1978); *see also Ambase Corp. v. United States*, 61 Fed. Cl. 794, 796 (2004) (explaining that this court lacks jurisdiction over private parties). Also, to the extent plaintiff's complaint may be construed as alleging conduct by California state officers, this court also lacks jurisdiction over such claims. In general, "[t]his court does not have jurisdiction over any claims alleged against states, localities, state and local government entities, or state and local government

---

[6] The Constitution cannot be considered either an express or implied-in-fact contract between plaintiff and the government. *See Taylor v. United States*, 113 Fed. Cl. 171, 173 (2013); *Griffith v. United States*, No. 14-793C, 2015 WL 430285, at *2–3 (Fed. Cl. Jan. 30, 2015).

officials and employees; jurisdiction only extends to suits against the United States itself." *Anderson v. United States*, 117 Fed. Cl. 330, 331 (2014); *see also Treviño v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) (explaining that this court cannot hear claims against "states, localities, state and local government officials, state courts, state prisons, or state employees"). Plaintiff's allegations against parties other than the United States thus fall outside our jurisdiction.[7] And no action by a federal agency, nor any failure by a federal agency to perform a required, money-mandating duty, is alleged.

Because plaintiff appears to make no specific allegation concerning anything done by any federal actor, this case does not come within our court's jurisdiction.[8] To the extent plaintiff discusses the United States government, he argues that it failed "to adhere to specific requirements" it is bound to perform "pursuant to the signed contract (i.e. the Constitution)," Pl.'s Resp. at 5, and that the government somehow aided and abetted the theft of his property, Compl. ¶ 31, all without describing specific government actions. *See also* Pl.'s Resp. at 6. But even if plaintiff's allegations were construed to implicate the United States government, he has failed to allege a matter within our jurisdiction, as explained below.

### 3. *Criminal Claims*

Plaintiff raises allegations of criminal conduct which include the commission and aiding and abetting of grand theft. *See* Compl. ¶¶ 2, 30–31, 48; *see also id.* ¶¶ 24 (alleging "sex trafficking, human trafficking, prostitution, drug cartel and other illegally obtained monies" and "funding terrorist groups including but not limited to funding ISIS"), 25 (complaining of credit default swaps, tax write-offs,

---

[7] In limited situations, the federal government may be liable for the actions of state agents, but this is not such a case. *See Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1196 (Fed. Cir. 2004) (noting that attribution of state acts to the federal government "is proper . . . only if the state officials were acting as agents of the federal government or pursuant to federal authority.") (citing *B & G Enterprises, Ltd., v. United States*, 220 F.3d 1318, 1323–24 (Fed. Cir. 2000); *see also, e.g., Hassan v. United States*, 41 Fed. Cl. 149, 150 (1998).

[8] The one exception is the allegation concerning the order of a federal district court, *see* Compl. ¶¶ 26–28, 89, which plaintiff contends "is void as a matter of law since there is nothing in [the] False Claims Act ('FCA') that corroborates and substantiates the judge's erroneous and void decision," *id.* ¶ 28; *see generally Sepehry-Fard v. U.S. Bank Nat'l Ass'n*, No. 18-cv-03885, 2018 WL 5099287 (N.D. Cal. Aug. 7, 2018). But Mr. Sepehry-Fard disclaims any intention of seeking review of that order, *see* Pl.'s Resp. at 4. In any event, our court is unable to review the correctness of decisions by other courts. *See Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) (citing *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994)); *Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 380 (2016).

and "Cross Collaritization [sic] of Plaintiff's alleged loan based on a non[-]existing alleged loan on Plaintiff's private property"), 30 (alleging literal theft), 38 (alleging defendants "are international money launderers and [P]onzi schemers, which are also known to illegally obtain and launder drug cartel, human trafficking, minor prostitution, sex trafficking and other illegally obtained monies, dressed falsely as alleged mortgage servicers, trustee of a closed trust that had shut down operations more than 10 years ago and whatever else one wants to call these sham entities"), 40. These allegations presumably relate to the foreclosure actions on his properties. *See* Compl. ¶¶ 39, 41–42, 53–54. Plaintiff also alleges identity theft. Compl. ¶¶ 44–45, 47. The Tucker Act, however, does not give our court jurisdiction over criminal actions. *See* 28 U.S.C. § 1491(a)(1); *Khalil*, 133 Fed. Cl. at 392 ("This court, however, 'has no jurisdiction to adjudicate any claims whatsoever under the federal criminal code.'") (quoting *Joshua*, 17 F.3d at 379). While it is theoretically possible that Congress could place a money-mandating statute in the criminal code, *Stanwyck*, 127 Fed. Cl. at 314, the Court is unaware of any such provision, and plaintiff fails to cite any. Thus, insofar as Mr. Sepehry-Fard alleges criminal conduct, this court lacks jurisdiction over those elements of his complaint.

### 4. Constitutional Claims

Without any specifics, plaintiff argues that defendants engaged in the following: "Violation of Due Process, Breach of contract (Constitution), [and] Violations of Constitution of United States 1st 4th 5th [Amendments]." Compl. ¶¶ 2, 3 n.2. Our court, however, has not been empowered to opine on every matter involving an alleged violation of a constitutional provision. Under the Tucker Act, 28 U.S.C. § 1491(a)(1), our jurisdiction is restricted to claims for money damages, and requires "the identification of a money-mandating law which was allegedly violated by the federal government." *Stanwyck*, 127 Fed. Cl. at 312 (citing *Mitchell*, 463 U.S. at 216–17). For jurisdiction to rest on the transgression of a constitutional provision, that provision must mandate that money be paid to particular individuals if violated. *See Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) ("To be cognizable under the Tucker Act, the claim must be for money damages against the United States, and the substantive law must be money-mandating."); *see also Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 605 (1967) (holding that our predecessor did not have jurisdiction over "every claim involving or invoking the Constitution").

The First and Fourth Amendments lack money-mandating provisions, thereby precluding this court's jurisdiction. *See United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983) (explaining that "the [F]irst [A]mendment, standing alone, cannot be so interpreted to command the payment of money"); *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997) ("Because monetary damages are not available for a Fourth Amendment violation, the Court of Federal Claims does not have jurisdiction over such a violation."). Concerning the Fifth Amendment, while violations of the Just Compensation Clause are within our jurisdiction, plaintiff

does not allege the taking of his property by federal government. And, as a general matter, violations of the Due Process Clause are not within our jurisdiction. *See LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). The exception is when the alleged due process violation has resulted in the exaction of money from a plaintiff. *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996).

To be sure, Mr. Sepehry-Fard alleges that he is owed a refund of taxes improperly imposed, Compl. ¶¶ 80–84, and explains that these payments were illegal exactions in violation of his due process rights, *see* Pl.'s Resp. at 6–8, 11–14. But plaintiff does not identify any *federal* taxes that were improperly exacted, and instead references local property taxes which he alleges violated the Treaty of Guadalupe Hidalgo. *See* Compl. ¶ 84; Pl.'s Resp. at 8. State and local taxes are not taxes paid to the United States and thus cannot be recovered in our court. *See Gharb v. United States*, No. 12-911C, 2013 WL 4828589, at *6 (Fed. Cl. Sept. 9, 2013) (explaining dual sovereignty and that states are not "mere appendages of the Federal Government" (quoting *Fed. Mar. Comm'n v. So. Carolina State Ports Auth.*, 535 U.S. 743, 751 (2002)). Accordingly, plaintiff has failed to allege an illegal exaction falling within our court's jurisdiction.

### 5. Miscellaneous Claims

Plaintiff also asserts that he has suffered from the deprivation of his civil rights, presumably in violation of 42 U.S.C. § 1983. *See* Compl. ¶¶ 2, 11–12. But Section 1983 and its related statutes do not confer jurisdiction on this court, even when claims are stated against the United States. *See Khalil*, 133 Fed. Cl. at 392 (noting that "[i]t is well established, however, that § 1983 does not confer jurisdiction on the Court of Federal Claims over claims against the United States") (quoting *Johnson v. United States*, No. 97-5107, 1998 WL 39162, at *2 (Fed. Cir. Feb. 3, 1998)). Indeed, these provisions do not even apply to the federal government. *See Hardin v. United States*, No. 15-585C, 2015 WL 6437379, at *4 & n.5 (Fed. Cl. Oct. 22, 2015) (noting that district courts have exclusive jurisdiction over claims brought under 42 U.S.C. §§ 1981, 1983, 1985, and 1986, and that such provisions "apply to actions of state and local, *not federal*, officials") (emphasis in original). Therefore, even if plaintiff somehow attributed civil rights violations to misconduct by the United States, this court would still lack jurisdiction over those claims.

Plaintiff makes several references to sources of law which cannot be the basis for our court's jurisdiction. He repeatedly alleges violations of California law. Compl. ¶¶ 1–2, 22, 30, 48; Pl.'s Resp. at 6. But state law violations cannot come within our power, as "state statutes do not create a right to money damages against the United States." *Griffin v. United States*, 96 Fed. Cl. 1, 8 (2010). Mister Sepehry-Fard also seems to be under the impression that the 1848 Treaty of Guadalupe Hidalgo protects his "land patent ownership" rights in this court.

Compl. ¶¶ 6, 66–81, 83–84.  But as this court has indicated in a similar context, plaintiff "fails to explain why the court has jurisdiction, when Congress established a separate administrative scheme for claims brought under the Treaty, and when such claims were required to be brought over 160 years ago." *Daniels v. United States*, No. 17-1598C, 2018 WL 1664476, at *8 (Fed. Cl. Apr. 6, 2018).  Plaintiff also refers to President Trump's Executive Order dated December 20, 2017, which freezes the assets of identified human rights violators.  *See* Compl. ¶¶ 7, 63 & Ex. X.  But far from containing a money-mandating clause, to the contrary this order expressly states (in Section 13) that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States."  Exec. Order No. 13,818, 82 Fed. Reg. 60,839 (Dec. 20, 2017).

In sum, as explained above, the complaint in this case fails to contain any allegations that place its claims within the subject-matter of our court, and dismissal is thus required.[9]

### III.  CONCLUSION

Even if everything that Mr. Sepehry-Fard alleges is true, there is nothing that our court can do about it, as Congress has not given us jurisdiction to hear cases like his.  Our court is unable to review the decisions of federal district courts, or to entertain claims based on the actions of private persons.  Our power extends to cases against the United States government for non-tortious violations of federal laws that require the payment of money damages by the federal government.  *See* 28 U.S.C. § 1491(a)(1).  Plaintiff has not alleged anything done by the federal government in violation of any identified, money-mandating federal sources of law that would place his claims within our court's jurisdiction. For these reasons, the government's motion to dismiss this case for lack of subject-matter jurisdiction, under RCFC 12(b)(1), is **GRANTED**.  The Clerk shall close the case.

**IT IS SO ORDERED.**

VICTOR J. WOLSKI
Senior Judge

---

[9] The Court notes that another case brought in our court by Mr. Sepehry-Fard, containing many of the same claims as this one, was recently dismissed for lack of subject-matter jurisdiction.  *See Sepehry-Fard v. United States*, No. 19-560C, 2019 WL 2070746, at *1–3 (Fed. Cl. May 9, 2019).